Filed 2/23/26  P. v. Sanchez CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ENRIQUE SANCHEZ, JR., <br><br> Defendant and Appellant. | B339394 <br><br> (Los Angeles County Super. Ct. No. NA082879) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura L. Laesecke, Judge.  Reversed.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Enrique Sanchez, Jr. appeals from a postjudgment order denying at the prima facie stage his petition pursuant to Penal Code section 1172.6[1] for resentencing. The Attorney General concedes, and we agree, the record of conviction does not show as a matter of law that defendant is ineligible for resentencing on his murder and attempted murder convictions. The jury was instructed on the natural and probable consequence doctrine, and the record does not show the jury necessarily found all elements of murder and attempted murder under current law. We therefore reverse the trial court's order denying defendant's petition.

## BACKGROUND

We summarize only those facts from the trial testimony pertinent to this appeal.

### 1.    *First amended information*

In the 2010 first amended information, the People charged defendant with the murder of Okpara Wright and the attempted willful, deliberate, and premediated murder of Herbert Jordan. With respect to both counts, the People alleged pursuant to section 12022.53, subdivision (d) that defendant personally and intentionally discharged a firearm which caused great bodily injury and death to Wright. The People also alleged additional firearm enhancements and a gang enhancement.

### 2.    *Trial*

A jury tried defendant alone. Jordan, the victim of the attempted murder, testified that on April 1, 2009, he was in Long

---

[1] Undesignated statutory citations are to the Penal Code.

2

Beach at a bus stop with his friend Wright. Jordan testified he was a member of the East Coast Crips gang prior to 2003. Jordan further testified a truck pulled up to where Jordan and Wright were sitting, and the back seat passenger yelled, " 'What that Longo gang like' " which is the same as asking, "Where are you from." Longo was a Long Beach gang. Jordan and Wright crossed the street to avoid the truck.

The truck returned and stopped near Jordan and Wright. The front passenger and the rear passenger exited the vehicle. Both passengers started shooting, and Jordan thought Wright "got hit from both directions . . . ." Shortly after the shooting, Jordan told an officer both the rear passenger and the front passenger shot at Wright and Jordan. In a photographic lineup after the shooting, Jordan identified defendant as one of the shooters.

Based on the evidence found at the scene of the shooting, a ballistic expert testified there were two firearms shot at the murder scene. Five casings were ejected from a .45 caliber semiautomatic. Other bullet fragments were from a .38 or .357 revolver. A deputy medical examiner testified Wright died of multiple gunshot wounds.

### 3.    *Relevant jury instructions*

The court instructed the jury on aiding and abetting and also instructed the jury that an aider and abettor is guilty not only of the crime he aided and abetted but is also guilty of "any other crime committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted."

The court instructed the jury to find defendant guilty of murder under a natural and probable consequences theory, it had to find beyond a reasonable doubt "1. The crime of assault with a

3

firearm was committed[;] [¶] 2. That the defendant aided and abetted that crime; [¶] 3. That a co-principal in that crime committed the crime of murder; and [¶] 4. The crime of murder was a natural and probable consequence of the commission of the crime of assault with a firearm."

The court instructed the jury on first degree murder, defining it as willful, deliberate, and premeditated murder, requiring that "the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation . . . ." The trial court also told the jury, "To constitute a deliberate and premeditated killing, the *slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, he decides to and does kill." (Italics added.)

Turning to the attempted murder charge, the court instructed the jury attempted murder requires "[a] direct but ineffectual act . . . towards killing another human being" and "[t]he person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."

The court further instructed on attempted willful, deliberate, and premediated murder: "If you find that the attempted murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is attempt

4

to commit willful, deliberate, and premediated murder. . . ." The court instructed, "To constitute willful, deliberate, and premediated attempted murder, the *would-be slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill another human being." (Italics added.)

The court informed the jury the natural and probable consequence doctrine could apply to attempted murder: "In order to find the defendant guilty of the crime of attempted murder under this theory, you must be satisfied beyond a reasonable doubt that: [¶] 1. The crime of assault with a firearm was committed[;] [¶] 2. That the defendant aided and abetted that crime; [¶] 3. That a co-principal in that crime committed the crime of attempted murder; and [¶] 4. The crime of attempted murder was a natural and probable consequence of the commission of the crime of assault with a firearm."

The trial court also instructed the jury on the elements of the intentional and personal discharge of a firearm that proximately caused great bodily injury or death to a person. Part of that instruction provided: "A proximate cause of great bodily injury or death is an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the great bodily injury or death and without which the great bodily injury or death would not have occurred."

### 4. *Jury verdict*

The jury found defendant guilty of the murder of Wright and further found the murder was committed willfully, deliberately, and with premeditation. The jury found true that

5

defendant personally and intentionally discharged a firearm, a handgun, that proximately caused great bodily injury and death to Wright. The jury found the other alleged firearm and gang allegations true.

The jury also found defendant guilty of the attempted murder of Jordan and that the attempted murder was committed willfully, deliberately, and with premeditation. The jury found true defendant personally and intentionally discharged a firearm causing great bodily injury and death to Wright. The jury also found other firearm and gang allegations true.

The court sentenced defendant to prison for a total term of 90 years to life.

## 5. *Appeal from the judgment of conviction*

In 2012, defendant appealed to this court. (*People v. Sanchez* (Mar. 6, 2012, B230559) [nonpub. opn.].) We rejected defendant's argument that the trial court committed evidentiary error and affirmed the judgment. (*Id.* at p. 15.)

## 6. *Defendant's 1172.6 petition for resentencing*

On June 22, 2022, defendant filed pro se a petition for resentencing. He alleged, inter alia, he could not presently be convicted of murder or attempted murder because of changes to sections 188 and 189 effective January 1, 2019. The prosecutor opposed the petition and argued defendant was ineligible for resentencing as a matter of law. The judge summarily denied defendant's 1172.6 petition for resentencing.[2]

---

[2] A different judge presided over resentencing than the original trial judge.

6

# DISCUSSION

Defendant argues, and respondent agrees, the record of conviction fails to establish as a matter of law that he is ineligible for resentencing as a matter of law.  We review de novo defendant's eligibility for section 1172.6 resentencing.  (*People v. Rushing* (2025) 109 Cal.App.5th 1025, 1030.)

## A.      Background on Section 1172.6

"Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) (Stats. 2018, ch. 1015) amended sections 188 and 189 of the Penal Code to 'eliminate[ ] natural and probable consequences liability for murder as it applies to aiding and abetting, and [to] limit[ ] the scope of the felony-murder rule.' [Citation.]"  (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1173.)  Amended section 188 provides that except as stated in the amended section 189 governing felony murder, " 'in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime.' "  (*Lee*, at p. 1173, quoting § 188, subd. (a)(3).)

The bill also added former section 1170.95, now numbered section 1172.6, "which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief."  (*People v. Lewis* (2021) 11 Cal.5th 952, 957.)  Relief is potentially available for "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable

7

consequences doctrine, or manslaughter . . . ." (§ 1172.6, subd. (a).)

"[T]he section 1172.6 petitioning 'process begins with the filing of a petition containing a declaration that all requirements for eligibility are met ([§ 1172.6], subd. (b)(1)(A)), including that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . Section 188 or 189 . . . ." ' [Citations.]" (*People v. Antonelli* (2025) 17 Cal.5th 719, 724.) " 'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' [Citation.]" (*Ibid.*) In *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*), our high court held a defendant who petitions for resentencing under section 1172.6 is ineligible for resentencing only if the "record conclusively establishes every element of the offense." (*Curiel*, at p. 463.) In making that determination a court may "give effect" to a jury's factual finding. (*Id.* at p. 465.)

If the petition survives the prima facie stage, the court must hold an evidentiary hearing at which the People bear the burden "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by" Senate Bill No. 1437. (§ 1172.6, subd. (d)(3).) If the People cannot carry this burden, the court must vacate the murder conviction and then resentence the defendant on any remaining charges. (*Id.*, subd. (d)(1).)

**B.     The Record of Conviction Does Not Show As a Matter of Law That Defendant Is Ineligible for Resentencing on His Murder Conviction**

Under current law, murder is "the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187,

subd. (a).) "Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (§ 188, subd. (a)(1).) With exceptions not relevant here, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Id.*, subd. (a)(3).)

Although the jury found Wright's murder was committed willfully and with premeditation and deliberation, the first degree murder instruction stated *the slayer* had to harbor that mental state. The jury finding defendant personally discharged a firearm causing Wright's death does not show defendant was the slayer because the jury instructions allowed the jury to find the firearm discharge allegation true if defendant "sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the great bodily injury or death . . . ." Defendant could have set in motion Wright's death without being the slayer because there was a second shooter who could have been the slayer. Additionally, the finding defendant personally discharged a firearm and proximately caused great bodily injury and death does not establish the defendant "intended to kill or was aware of the danger to life that his act posed." (*People v. Offley* (2020) 48 Cal.App.5th 588, 598 (*Offley*).)

In sum, the jury verdict does not show as a matter of law defendant harbored malice aforethought. Under the trial court's instructions, the jury could instead have concluded defendant aided and abetted an assault with a firearm the natural and probable consequences of which was murder. Thus, the entire record of conviction does not foreclose that defendant was

9

convicted based on a now invalid theory of murder.[3]  (*Curiel*, *supra*, 15 Cal.5th at p. 465 [court "may look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the factual allegations in [defendant]'s petition."].)

## C. The Record of Conviction Does Not Show As a Matter of Law Defendant Is Ineligible for Resentencing on Attempted Murder

The jury found defendant guilty of the attempted murder of Jordan and that attempted murder was committed willfully, deliberately, and with premeditation.  The jury also found defendant personally and intentionally discharged a firearm causing great bodily injury and death to Wright.

Under current law, attempted murder requires intent to kill.  (*People v. Morales* (2024) 102 Cal.App.5th 1120, 1132.)  We cannot conclude, as a matter of law, that the record of conviction shows defendant harbored intent to kill.  The jury finding that the attempted murder was committed willfully and with premeditation and deliberation shows only that the "slayer" harbored this mental state.  The jury does not further identify the "slayer."  Additionally, the fact defendant intended to discharge a firearm does not show the defendant "harbored a

---

[3]  We thus do not consider defendant's arguments that other instructions permitted the jury "to convict appellant under a theory of imputed malice . . . ."  We also do not address defendant's argument that the prosecutor's closing argument invited the jury to convict defendant based on the natural and probable consequence doctrine.

10

particular mental state . . . ."**4** (*Offley*, *supra*, 48 Cal.App.5th at p. 598 [explaining that section 12022.53, subdivision (d) "provides that the defendant must have intended to discharge a firearm, but does not refer to an 'intent to achieve any additional consequence.' "]

## DISPOSITION

The trial court's order denying defendant's Penal Code section 1172.6 petition for resentencing at the prima facie stage is reversed.**5**

<u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.          M. KIM, J.

---

**4** Because we reverse the denial at the prima facie stage of defendant's petition for resentencing on attempted murder, we do not consider defendant's argument that "[t]he kill zone instruction . . . eroded the requirement . . . of intent to kill in the attempted murders [*sic*]." We also decline to consider defendant's argument that his youth militated against a finding of reckless indifference to human life.

**5** We express no opinion on how the trial court should rule at the evidentiary hearing on defendant's petition.

11